UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES O'CALLAGHAN,

                    Plaintiff,

          – against –

THE CITY OF NEW YORK,

                    Defendant.

**OPINION AND ORDER**

16 CIV. 1139 (ER)

Ramos, D.J.:

Plaintiff James O'Callaghan ("Plaintiff"), proceeding *pro se*, brings this action against the City of New York (the "City")[1] alleging violations of his civil rights.[2]  Specifically, Plaintiff asserts claims of conspiracy, age and race discrimination, fraud, and negligence in connection with the police investigation of an assault committed against him.  *See* Compl., Doc. 1 at 1.  The City now moves to dismiss the Complaint with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Doc. 10.

For the reasons discussed below, the City's motion is GRANTED.

---

[1] The caption of the Complaint only lists the City of New York as a Defendant, although the Complaint purports to also list as "Defendants" Detective Brian O'Leary, Sergeant James Fox, Police Officer Edward Guzik, Corporation Counsel for the City of New York Zachary W, Carter, and Assistant Corporation Counsel Yael Barbabay by listing them on the first page.  *See* Doc. 1.  These individuals are not listed as Defendants on the docket nor have summonses been issued by the Clerk of the Court as to these individuals.  *See* Doc. 2 (Summons as to City of New York).  However, as discussed more fully within, because the Plaintiff is proceeding *pro se*, the Court assumes that Plaintiff would seek the opportunity to amend to join these individuals as Defendants.

[2] While Plaintiff did not specifically reference 42 U.S.C. § 1983 in his Complaint, submissions from a *pro se* litigant must be construed liberally and interpreted "to raise the strongest arguments that they suggest."  *Triestman v. Federal Bureau of Prison*, 470 F.3d 471, 474 (2d Cir. 2006).  The court therefore construes Plaintiff's action as one arising under 42 U.S.C. § 1983.

I.     **BACKGROUND**

A.     **Factual Background**

The following facts, which are taken from the Complaint, are assumed to be true for purposes of the instant motion.[3]

On February 19, 2014, Plaintiff, a senior citizen, was working as a driver for Uber when he was assaulted by a New York City yellow cab driver, who threw him to the ground and punched him several times in the face.  Compl. ¶¶ 1, 10.  Two people witnessed this altercation, one of whom took pictures of the incident.  *Id.*  ¶¶ 1, 2.  The taxi driver then fled the scene, and the police arrived shortly thereafter.  *Id.*  Police officers spoke with the witnesses at the scene and collected evidence from one of the witnesses, including photographs of the incident, the taxi driver, and the taxi.  *Id.* ¶ 2.  Police Officer Guzik took the witness information and told the Plaintiff that the taxi driver would be easy to locate.  *Id*.  The Police Report, which Plaintiff attached to his Complaint, notes the taxi plate number reported at the scene.  Doc. 1 at 13-14 ("Police Report").  An ambulance arrived and members of the fire department bandaged the Plaintiff's cuts.  Compl. ¶ 2.  As a result of the attack, Plaintiff currently suffers from painful headaches and constant shaking of his hands.  *Id.* ¶ 13.  Plaintiff's neurosurgeon at New York Presbyterian Hospital concluded that Plaintiff suffered a severe concussion.  *Id.*

After the incident, Detective Brian O'Leary was assigned to the case.  *Id.* ¶ 3.  In a series of texts between Detective O'Leary and the Plaintiff, Detective O'Leary stated that the taxi driver was arrested for assault on June 7, 2014 and that the police did not need any additional

_____

[3] As is required on a motion pursuant to Rule 12(b)(6), the factual allegations in the Complaint are accepted to be true for purposes of this motion, and all reasonable inferences are drawn therefrom in favor of Plaintiff.  *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010).  The facts recited herein do not constitute findings of fact by this Court.

information from Plaintiff because the arrestee admitted his actions.  *Id.*; *see also* Doc. 1 at 9-10 (text messages from Det. Brian O'Leary).  However, Plaintiff claims that almost four months after the incident, no arrest had actually been made in the case, despite the fact that Detective O'Leary knew the name of the assailant.  Compl. ¶¶ 3, 12.[4]  Although Plaintiff continued to attempt to get information from Detective O'Leary about the progress of the investigation, the telephone number that Plaintiff used to text message Detective O'Leary is now disconnected.  *Id.* ¶ 12.

Plaintiff attempted to obtain information through a number of other avenues, including various divisions at the District Attorney's Office, the New York Police Department ("NYPD") 17th Precinct, and the Taxi and Limousine Commission.  *Id.* ¶¶ 4-7.  The District Attorney's Office told Plaintiff that they could not do anything unless an arrest was made in the case, and the other departments he contacted similarly offered no assistance.  *Id.*  In November 2014, nine months after the incident, Sergeant Fox called the Plaintiff and said the police could not contact the witness.  *Id.* ¶ 5.

At the time of the incident, Plaintiff alleges that the City was attempting to restrict Uber's activity, so the City attempted to conceal the fact that he had been assaulted by a cab driver.  *Id.* ¶ 6.

## B.  Procedural History

Plaintiff filed a claim with the City regarding the incident.  *Id.* ¶¶ 8-9.[5]  He was informed by the Clerk that he could not pursue the claim because he did not bring his claim within 90 days

---

[4] Plaintiff has further stated in his submissions to the Court that Detective O'Leary "lied about the assailant being arrest for assault."  Doc. 8 at 2.

[5] Although the Complaint does not state when Plaintiff filed this claim, Plaintiff's reply brief does attach as an exhibit a letter dated February 17, 2015 from the City of New York Office of the Comptroller acknowledging receipt of Plaintiff's claim.  Doc. 16 at 5.  Defendant first argues that Plaintiff did not file a notice of claim with the City, *see* Doc. 13 at 16, and then that Plaintiff's claim was untimely based on this February 17, 2015 acknowledgement of

of the occurrence.  *Id.*  Subsequently, on March 23, 2015, Plaintiff filed a lawsuit against the City

in New York State Supreme Court.  Doc. 11-3.  Plaintiff's complaint detailed the events that

took place on and after February 19, 2014, including the altercation with the cab driver and

Plaintiff's interactions with NYPD officials during the investigation that followed.  *Id.* at 6-7.

The complaint alleged that the City violated his federal and state rights by not adhering to its

own rules, federal and state Constitutions, and laws prohibiting age discrimination and civil

rights violations.  *Id.* at 2.  Assistant Corporation Counsel ("ACC") Yael Barbabay filed a motion

to dismiss on behalf of the City on the grounds that the complaint did not state a cause of action.

*See* Doc. 11-2 at 1.

On February 4, 2016, Justice Margaret A. Chan of the Supreme Court of New York

granted the City's motion to dismiss.  *Id.* at 4-5.  Justice Chan dismissed the action in its entirety

for failure to state a claim on the basis that a claim sounding in negligent police investigation

was not viable in New York, and that Plaintiff failed to state a claim against the City for

municipal liability.  *Id.*  Specifically, the Court held that because Plaintiff did not claim that the

"actions or inactions…were the result…of an official policy or custom of the Police Department

or the City of New York," he did not state a claim pursuant to *Monell v. Dep't of Soc. Servs. of

City of N.Y.*, 436 U.S. 658 (1978).  *Id.* at 4-5.  The decision was dated February 4, 2016 and filed

by the New York County Clerk's Office on February 11, 2016.  *Id.* at 1.

Plaintiff filed the instant lawsuit in the U.S. District Court for the Southern District of

New York on February 16, 2016.  *See* Compl.  Like his state court complaint, the Complaint

detailed the events with the cab driver and his attempt to obtain information about the

investigation that followed.  *Id.*  The federal Complaint provides more details regarding the

---

receipt.  *See* Doc. 17 at 4.  For purposes of this motion, the Court need not determine whether Plaintiff's notice of
claim was timely under New York law.

incident and subsequent investigation, and also includes additional allegations regarding the Corporation Counsel's alleged wrongdoing related to the state litigation.  Specifically, Plaintiff alleges that in the City's motion to dismiss, ACC Barbabay included "facts and procedural history that were completely false."  *Id.* ¶¶ 10-11.  Plaintiff further alleges that the City's motion was a cover-up based on race and age discrimination.  *Id.* ¶ 12.

The City has moved to dismiss the Complaint in its entirety.  Doc. 10; *see also* Doc. 13 at 2.

## II.   LEGAL STANDARDS

### A.  12(b)(6) Motion to Dismiss Standard

On a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor.  *Gonzalez v. Caballero,* 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008).  However, this requirement does not apply to legal conclusions, bare assertions or conclusory allegations. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 681 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In order to satisfy the pleading standard set forth in Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face.  *Id.* at 678 (citing *Twombly*, 550 U.S. at 570).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Accordingly, a plaintiff is required to support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id*. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

Though a plaintiff may plead facts alleged upon information and belief, "where the belief is based on factual information that makes the inference of culpability plausible," *Arista Records, LLC v. Doe 3,* 604 F.3d 110, 120 (2d Cir. 2010), such allegations must be "'accompanied by a statement of the facts upon which the belief is founded.'" *Navarra v. Marlborough Gallery, Inc.*, 820 F. Supp. 2d 477, 485 (S.D.N.Y. 2011) (quoting *Prince v. Madison Square Garden,* 427 F. Supp. 2d 372, 385 (S.D.N.Y. 2006)); *see also Williams v. Calderoni*, No. 11 Civ. 3020 (CM), 2012 WL 691832, at *7-8 (S.D.N.Y. Mar. 1, 2012) (finding pleadings on information and belief insufficient where plaintiff pointed to no information that would render his statements anything more than speculative claims or conclusory assertions). A complaint that "tenders naked assertions devoid of further factual enhancement" will not survive a motion to dismiss under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted) (brackets omitted).

## B. *Pro Se* Plaintiff

In the case of a *pro se* plaintiff, the Court is obligated to construe the complaint liberally, *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011), and to interpret the claims as raising the strongest arguments that they suggest. *Triestman*, 470 F.3d at 474; *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citing *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010)). The obligation to read a *pro se* litigant's pleadings leniently "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. NYS Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). "However, even *pro se* plaintiffs asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

**C.  Additional Standards Regarding Section 1983**

In light of Plaintiff's *pro se* status, the Court liberally construes his claims as arising under 42 U.S.C. § 1983 ("Section 1983"), which provides a cause of action against "any person who, acting under color of state law, deprives another of a right, privilege, or immunity secured by the Constitution or laws of the United States."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993)).  To state a claim under Section 1983, a plaintiff must allege that:  (1) defendants were state actors or were acting under color of state law at the time of the alleged wrongful action; and (2) the action deprived the plaintiff of a right secured by the Constitution or federal law.  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).  "Section 1983 is only a grant of a right of action; the substantive right giving rise to the action must come from another source."  *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150 (1970)).  Thus, a civil rights action brought under § 1983 will stand only insofar as the plaintiff can prove an actual violation of his rights under the Constitution or federal law.  *Id.*

**D.  Extrinsic Materials Considered For a Rule 12(b)(6) Motion to Dismiss**

"When presented with a motion to dismiss pursuant to Rule 12(b)(6), the court may consider documents that are referenced in the complaint, documents that the plaintiffs relied on in bringing suit and that are either in the plaintiffs' possession or that the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken."  *Silsby v. Icahn*, 17 F. Supp. 3d 348, 354 (S.D.N.Y. 2014) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).  Similarly, a court may consider a *res judicata* or collateral estoppel defense on a Rule 12(b)(6) motion to dismiss "when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice."

*TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498-99 (2d Cir. 2014) (citing *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992) ("[W]hen all relevant facts are shown by the court's own records, of which the court takes notice, the defense [of res judicata] may be upheld on a Rule 12(b)(6) motion.")); *Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC*, 23 F. Supp. 3d 344, 360 (S.D.N.Y. 2014) (noting that in a 12(b)(6) motion where collateral estoppel or *res judicata* is an issue, "dismissal is appropriate when it is clear from the face of the complaint, and consideration of matters which the court may take judicial notice of, that the plaintiff's claims are barred as a matter of law") (internal citations omitted).

Local Civil Rule 12.1 of the Southern District of New York directs represented parties who move to dismiss by referring to matters outside the pleadings to provide notice to a *pro se* party that the matter may be treated as a motion for summary judgment and to further explain what the plaintiff must do to oppose summary judgment. *See* S.D.N.Y. Civil Local Rule 12.1; *see also Hernandez v. Coffey*, 582 F.3d 303, 308 n.2 (2d Cir. 2009). Here, Defendant has served the requisite notice on Plaintiff. However, the Court need not convert the motion to one for summary judgment because the Court can take judicial notice of the extrinsic materials relied upon by Defendant.

Specifically, Defendant attaches the following documents to the declaration submitted in support of the motion: (1) the complaint filed by Plaintiff in the Supreme Court, Index No. 100523/15, dated March 23, 2015, Doc. 11-3; (2) the decision by Justice Chan dismissing the case dated February 4, 2016, Doc. 11-2;[6] and (3) a copy of the Civil Docket Sheet in this matter,

---

[6] Plaintiff argues, mistakenly, that this decision "has nothing to do with [his] case" and ought not be considered. Doc. 16 at 4.

Doc. 11-4.[7]  Accordingly, in considering Defendant's motion, the Court takes judicial notice of

public documents filed in connection with the state court proceedings and the Civil Docket Sheet

filed in this federal matter, "not for the truth of the matters asserted … but rather to establish the

fact of such litigation and related filings."  *Kramer v. Time Warner Inc.,* 937 F.2d 767, 774 (2d

Cir. 1991); *see also Greenwich Life Settlements, Inc. v. ViaSource Funding Grp., LLC*, 742 F.

Supp. 2d 446, 452 (S.D.N.Y. 2010) (taking judicial notice of state court documents); *Tokio*

*Marine & Nichido Fire Ins. Co. v. Canter*, No. 07 Civ. 5599 (PKL), 2009 WL 2461048, at *4

(S.D.N.Y. Aug. 11, 2009) (same).

## III.   PRECLUSION

Defendant argues that Plaintiff's claims are barred both by the doctrines of *res judicata*

and collateral estoppel.  Doc. 18 at 6-9.

Under the doctrine of *res judicata*, "a final judgment on the merits of an action precludes

the parties or their privies from relitigating issues that were or could have been raised in that

action."  *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994) (quoting *Allen v. McCurry*, 449

U.S. 90, 94 (1980)).  Collateral estoppel, or issue preclusion, is a corollary to the doctrine of *res*

*judicata* that prohibits re-litigating decided issues of fact or law.  *McCurry*, 449 U.S. at 94.  Both

collateral estoppel and *res judicata* apply to actions under 42 U.S.C.A. § 1983. *Univ. of*

*Tennessee v. Elliott*, 478 U.S. 788, 797 (1986).  Congress has directed federal courts to accord

state judicial proceedings the same full faith and credit that state courts provide them, and this

policy applies in § 1983 litigation.  *McCurry*, 449 U.S. at 98; *Golino v. City of New Haven*, 950

F.2d 864, 869 (2d Cir. 1991).

---

[7] Defendant also attached the Complaint in this matter, which does not constitute extrinsic evidence for purposes of
a motion to dismiss.

### A. Res Judicata

The doctrine of *res judicata* "precludes a party from litigating a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter." *Josey v. Goord*, 9 N.Y.3d 386, 389-390, 880 N.E.2d 18 (N.Y. 2007) (internal quotation marks and citation omitted). "To determine the effect of a state court judgment, federal courts, including those sitting in diversity, are required to apply the preclusion law of the rendering state." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 87 (2d Cir. 2000). Because the basis for the *res judicata* arises from a New York state court action, the preclusive effect in federal court of the state-court judgment is determined by New York law and the Court's analysis is governed by "New York's transactional approach to *res judicata*." *Jacobson v. Fireman's Fund Ins. Co*., 111 F.3d 261, 265 (2d Cir. 1997).

Under New York's "transactional approach," a claim is barred by the prior judgment, "where the same foundation [sic] facts serve as a predicate for each proceeding." *Hasenstab v. City of New York*, 664 F. Supp. 95, 98 (S.D.N.Y. 1987) (internal quotation marks and citation omitted). "This includes all claims that were litigated or could have been litigated at that time." *Id.* (internal quotation marks and citation omitted). "[O]nce a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357, 429 N.E.2d 1158 (N.Y. 1981); *see also Josey*, 9 N.Y.3d at 389-390 (quoting *O'Brien*). In determining what constitutes the same transaction, the court should look to: how the facts are related in time, space, origin or motivation; whether they form a convenient trial unit; and whether treating them as a unit conforms to the parties' expectations. *Marinelli Associates v. Helmsley-Noyes Co.*, 265 A.D.2d 1, 5, 705 N.Y.S.2d 571, 575-76 (1st

Dept. 2000). Even if there are variations in the facts alleged or different relief is sought, if the actions are grounded on the same gravamen of the wrong, *res judicata* applies. *Id.*; *see also Green v. Kadilac Mortgage Bankers, Ltd.*, 936 F.Supp. 108, 114 (S.D.N.Y. 1996) (holding plaintiffs could not relitigate issues already determined in a foreclosure action by recasting their assertions as § 1983 violations).

Plaintiff's claims in the instant case can be divided into two categories: (1) claims related to the investigation of the February 19th incident; and (2) claims related to the Corporation Counsel's defense of the City during the litigation of Plaintiff's state case. As to the latter, Plaintiff alleges that ACC Barbabay included false information in the City's motion to dismiss as part of a greater conspiracy to protect the taxi cab industry in New York from inroads being made by Uber. Compl. ¶¶ 10-11. Additionally, Plaintiff asserts that Corporation Counsel Zachary Carter further engaged in a cover-up "based on racial and age discrimination." *Id.* ¶ 12.

Defendant argues that both lawsuits involve the same claims and operative facts and assert identical allegations. Doc. 13 at 6. The Court agrees. A review of the New York action makes clear that the claims presented here are virtually identical to the claims already decided by the state court. Under New York's transactional approach, his claims, except the claims as to the Corporation Counsel's litigation-related actions, undeniably arise out of the same subject matter he advanced in state court: the City's investigation of the February 19th incident. In both the state and federal action, Plaintiff notes that he was attacked and injured by a taxi driver and alleges that the NYPD failed to properly handle his case. *See* Doc. 11-3. Additionally, Plaintiff described the nature of his claims in state court in nearly identical terms to his claims in the instant action. *Id.* at 3.[8] The New York Supreme Court's dismissal of Plaintiff's lawsuit

---

[8] While Plaintiff did not allege race discrimination in his state court complaint, this additional allegation does not alter the Court's analysis that *res judicata* applies because it could have been asserted in the state court. Plaintiff's

constitutes a "judgment on the merits" because the court considered the substance of Plaintiff's claims.  *See* Doc. 11-2 at 4-5.

Here, the state court proceedings have *res judicata* effect and preclude the majority of Plaintiff's claims.  Applying these principles, except as to Plaintiff's claim regarding the Corporation Counsel's litigation-related actions, the Court concludes that the doctrine of *res judicata* precludes the remainder of Plaintiff's claims.   Thus, Plaintiff's claims concerning conspiracy, age discrimination, racial discrimination, fraud, negligent investigation and concealment of the identity of the cab driver, and the violation of Police rules are precluded because they were actually brought or could have been brought in the state proceeding.  The Court finds that the claim regarding the Corporation Counsel's actions could not have been asserted in the underlying state court action because these allegations necessarily arise from Counsel's later participation in the litigation.

Furthermore, although Plaintiff argues that both the state and federal cases were proceeding at the same time, *see* Doc. 8, the record before the Court shows that the state court decision was a prior decision for purposes of preclusion doctrines.   On February 4, 2016 Justice Chan granted the City's motion to dismiss, and the Opinion was filed with the County Clerk's office on February 11, 2016.  Doc. 11-2 at 4-5.  The instant lawsuit was not filed in this Court until February 16, 2016, almost a week after Justice Chan dismissed the state suit.  *See* Compl.[9] As is clear from the face of the Complaint itself, *see* Doc. 1 at 1, the Complaint was stamped on February 16, 2016 and filed that same day.  In any event, the state court decision would have

---

allegations, including those related to race discrimination, are grounded on the same "gravamen of the wrong."  *See* *Marinelli,* 705 N.Y.S.2d at 575-76.

[9] The Court notes that the federal Complaint was dated and signed on January 22, 2016—before Justice Chan's dismissal—but Plaintiff did not file it with the Clerk's office until February 16, 2016.  *See* Compl.

preclusive effect even if the cases were proceeding simultaneously.  The general rule of concurrent jurisdiction allows lawsuits to proceed in state and federal court in parallel.  *Noel v. Hall*, 341 F.3d 1148, 1163 (9th Cir. 2003); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005) (citing with approval *Noel*, 341 F.3d at 1163–64) ("Disposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law."); *United States v. Northrop*, 147 F.3d 905, 909 (9th Cir. 1998) ("The date of rendition of the judgment is controlling for purposes of *res judicata*, not the dates of commencement of the action…") (citing Restatement (Second) of Judgments § 14 (1980)); *Unger v. Consolidated Foods Corp.*, 693 F.2d 703, 705 (7th Cir. 1982) ("As between two actions pending at the same time, the first of two judgments has preclusive effect on the second.") (citing, as to *res judicata*, Restatement (Second) of Judgments § 14)).  Here, the state lawsuit was decided first and this Court "must respect the state court's judgment on those merits."  *See Merritt v. Countrywide Fin. Corp.*, No. 09 Civ. 01179-(BLF), 2015 WL 5542992, at *9 (N.D. Cal. Sept. 17, 2015).

Thus, the Court finds that the doctrine of *res judicata* applies, except as to the claim regarding the Corporation Counsel's actions.  If Plaintiff was unhappy with the result of that proceeding, the proper recourse was to file an appeal, not to commence a federal action on the same facts.

### B.  Collateral Estoppel

The same result is compelled by application of the separate doctrine of collateral estoppel.  The "fundamental notion" of the doctrine of collateral estoppel, or issue preclusion, "is that an issue of law or fact actually litigated and decided by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit between the same parties or their privies."

*Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008) (internal quotations and citation omitted).

Under New York law, "collateral estoppel prevents a party from relitigating an issue decided

against that party in a prior adjudication" where that issue (1) is identical to an issue already

decided (2) in a previous proceeding in which that party had a full and fair opportunity to litigate.

*Fuchsberg & Fuchsberg v. Galizia*, 300 F.3d 105, 109 (2d Cir. 2002) (internal quotations and

citations omitted).  The litigant seeking the benefit of collateral estoppel must demonstrate the

identicality and decisiveness of the issue, and the party to be precluded bears the burden of

demonstrating the absence of a full and fair opportunity to litigate the issue in the prior action.

*Buechel v. Bain*, 97 N.Y.2d 295, 304, 766 N.E.2d 914, 919 (N.Y. 2001).  "New York requires

only that the issue have been properly raised by the pleadings or otherwise placed in issue and

actually determined in the prior proceeding."  *Coveal v. Consumer Home Mortgage, Inc.*, No. 04

Civ. 4755 (ILG), 2005 WL 2708388, at *5 (E.D.N.Y. Oct. 21, 2005) (internal quotation marks

and citation omitted).  Moreover, "federal district courts are obliged to accord due recognition to

the preclusive effect of state court judgments that adjudicate federal rights after full and fair

consideration, even if the state court's decision may have been erroneous."  *Harris v. N.Y. State

Dep't of Health*, 202 F. Supp. 2d 143, 157 (S.D.N.Y. 2002).

Examining the facts raised and issues determined by the New York Supreme Court, the

Court concludes that there is sufficient identity of issue between the allegations in state court

action and those presented here.  The New York Supreme Court has already held Plaintiff's

allegations are without merit, finding that negligent investigation was not a viable claim in New

York, and that Plaintiff failed to state a viable claim against the City for municipal liability.  Doc.

11-2 at 4-5.

Additionally, Plaintiff has not contested that he had a full and fair opportunity to litigate the issues in the prior action, and the Court sees nothing in the record to suggest he lacked this opportunity, despite his *pro se* status.  Under New York law, an inquiry into whether a party had a full and fair opportunity to litigate a prior determination must concentrate on "the various elements which make up the realities of litigation," including "the forum for the prior litigation, the competence and experience of counsel, the foreseeability of future litigation, and the context and circumstances surrounding the prior litigation that may have deterred the party from fully litigating the matter."  *Conte v. Justice*, 996 F.2d 1398, 1401 (2d Cir. 1993) (citations omitted). A plaintiff's status as a *pro se* litigant does not, by itself, preclude barring a claim under the doctrine of collateral estoppel, but it is relevant to a determination of the fairness of his prior opportunity to be heard.  *Cruz v. Root*, 932 F. Supp. 66, 69 (W.D.N.Y. 1996).  Here, the Court finds no circumstances to suggest that Plaintiff was deterred from fully litigating the matter in state court, nor does the Plaintiff assert otherwise.  Justice Chan's decision notes that Plaintiff submitted an opposition to the City's motion to dismiss.  Doc. 11-2 at 1 ("Defendant made the instant motion to dismiss…and plaintiff submitted opposition."); *see also* Doc. 8 at 1 (noting that counsel for the City told Plaintiff "that [he] must submit a reply to the City's motion [to dismiss], which [he] did").

Accordingly, Plaintiff's claims, except for the claim arising from the Corporation Counsel's actions in defending the lawsuit, are also barred under the doctrine of collateral estoppel.

## IV.   MUNICIPAL LIABILITY PURSUANT TO 42 U.S.C. § 1983 ("*MONELL* CLAIM")

The sole remaining claim is asserted against the City for the actions of the Corporation Counsel in defending the state case.  Specifically, Plaintiff alleges that the City's motion to dismiss was dishonest and fraudulent and part of a greater conspiracy to protect the taxi cab

industry in New York.  Compl. ¶¶ 10-11.  Additionally, Plaintiff asserts that Corporation

Counsel Zachary Carter engaged in a cover-up "based on racial and age discrimination."  *Id.* ¶

12.

     "Congress did not intend municipalities to be held liable [under § 1983] unless action

pursuant to official municipal policy of some nature caused a constitutional tort."  *Monell v. N.Y.*

*City Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978).  A municipality cannot be held liable under

§ 1983 on a theory of *respondeat superior. Id.*  "[T]o prevail on a claim against a municipality

under section 1983 based on acts of a public official, a plaintiff is required to prove:  (1) actions

taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4)

damages; and (5) that an official policy of the municipality caused the constitutional injury."

*Roe v. City of Waterbury,* 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell,* 436 U.S. at 690-91).

"The fifth element reflects the notion that 'a municipality may not be held liable under § 1983

solely because it employs a tortfeasor.'"  *Hayes v. Cnty. of Sullivan,* 853 F. Supp. 2d 400, 438-39

(S.D.N.Y. 2012) (quoting *Bd. of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 403 (1997)).  Thus, a

plaintiff must allege that such a municipal policy or custom is responsible for his injury.  *Brown,*

520 U.S. at 403-04; *see also Connick v. Thompson,* 131 S.Ct. 1350, 1359 (2011) ("A

municipality or other local government may be liable under [§ 1983] if the governmental body

itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such

deprivation.") (quoting *Monell,* 436 U.S. at 692).

     Courts in this Circuit apply a two prong test for § 1983 claims brought against a

municipality.  *Vippolis v. Vill. of Haverstraw,* 768 F.2d 40, 44 (2d Cir. 1985) (citation omitted).

First, the plaintiff must "prove the existence of a municipal policy or custom in order to show

that the municipality took some action that caused his injuries beyond merely employing the

misbehaving [employee]." *Id.* (citation omitted).  Second, the plaintiff must establish a "'direct

causal link between a municipal policy or custom and the alleged constitutional deprivation.'"

*Hayes,* 853 F.Supp.2d at 439 (quoting *City of Canton v. Harris,* 489 U.S. 378, 385 (1989)).  To

satisfy the first requirement, a plaintiff must prove the existence of:

> (1) a formal policy which is officially endorsed by the municipality; (2) actions
> taken or decisions made by government officials responsible for establishing
> municipal policies which caused the alleged violation of the plaintiff's civil rights;
> (3) a practice so persistent and widespread that it constitutes a custom or usage and
> implies the constructive knowledge of policy-making officials; or (4) a failure by
> official policy-makers to properly train or supervise subordinates to such an extent
> that it amounts to deliberate indifference to the rights of those with whom municipal
> employees will come into contact.

*Moray v. City of Yonkers,* 924 F. Supp. 8, 12 (S.D.N.Y. 1996) (internal citations and quotation

marks omitted); *see also Brandon v. City of New York,* 705 F. Supp. 2d 261, 276–77 (S.D.N.Y.

2010) (quoting *Moray* and updating citations to cases).  Although a plaintiff is not required to

identify an express rule or regulation to establish a claim for municipal liability, proof of "a

single incident alleged in a complaint, especially if it involved only actors below the policy-

making level, does not suffice to show a municipal policy."  *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d

Cir. 1998) (quoting *Ricciuti v. N.Y. City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991))

(internal quotation marks omitted); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 123,

127 (1988) (plurality opinion) (explaining that only municipal officials who have "final

policymaking authority" concerning the particular activities giving rise to a plaintiff's claims

"may by their actions subject the government to § 1983 liability" (citation omitted)).  "In the end,

therefore, a plaintiff must demonstrate that, through its deliberate conduct, the municipality was

the moving force behind the alleged injury."  *Hayes*, 853 F. Supp. 2d at 439 (quoting *Roe*, 542

F.3d at 37) (internal quotation marks omitted).

As to Plaintiff's claim arising from the Corporation Counsel's alleged fraudulent and discriminatory actions, Plaintiff has not satisfactorily alleged the adoption of a widespread custom, but instead only offers conclusory allegations of wrongdoing at the City-level.  Plaintiff alleges that these actions were driven by the City's desire to avoid "bad publicity for an attack by a yellow cab driver against a senior citizen Uber driver."  Compl. ¶ 11.  Plaintiff further avers that the City, "starting from the top," protected the yellow cab industry because "the Mayor was working against Uber saying they were causing congestion…."  *Id.* ¶ 6.

Such conclusory allegations must be disregarded.  *Tieman v. City of Newburgh*, No. 13 Civ. 4178 (KMK), 2015 WL 1379652, at *14 (S.D.N.Y. Mar. 26, 2015) (listing cases and finding conclusory allegations inadequate where plaintiff alleged, *inter alia*, that the City had "a policy or practice of using excessive force when effectuating arrests, and fail[ed] to train and/or discipline its employees to prevent violations of arrestee's [sic] constitutional rights."); *see also Missel v. Cty. of Monroe,* 351 F. App'x 543, 545 (2d Cir. 2009) ("To allege the existence of an affirmative municipal policy, a plaintiff must make factual allegations that support a plausible inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policymaking authority for the municipality."); *Duncan v. City of New York*, No. 11 Civ. 3826 (CBA), 2012 WL 1672929, at *3 (E.D.N.Y. May 14, 2012) (holding that "boilerplate statements" claiming that New York City had a custom of making and tolerating false arrests and of using excessive force "[were] insufficient to state a claim of municipal liability under *Monell*").  At no point does Plaintiff allege any details of the policy that purportedly guided the conspiracy and cover-up.  Because Plaintiff fails to point to any non-conclusory plausible factual

allegations concerning the policy that resulted in the deprivation of his rights, the remaining claim must also be dismissed.[10]

## V.     LEAVE TO AMEND

The Second Circuit has explained that "[a] *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citations and internal quotation marks omitted). Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, the "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).

However, even under this liberal standard, this Court finds that any attempt to amend the pleading to include the additional individual defendants referenced in this case would be futile. It is clear from the Complaint that Plaintiff does not have any possibility of asserting plausible claims against these individuals. *See Cuoco*, 222 F.3d at 112 ("The problem with [plaintiff's] cause[ ] of action is substantive; better pleading will not cure it.  Repleading would thus be futile. Such a futile request to replead should be denied.") (citing *Hunt v. Alliance N. Am. Gov't Income Trust*, 159 F.3d 723, 728 (2d Cir. 1998)); *see also Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 58 (2d Cir. 2002) (explaining that "[w]here it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend. . . . [and that] [a]n amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)") (citations omitted).  Additionally, the Court has already taken into account Plaintiff's opposition papers and statements at the pre-motion

---

[10] Plaintiff's memorandum in response also alleges that the taxi industry donated over $500,000 to the Mayor's election campaign and that these contributions are under federal investigation.  Doc. 16 at 2-3.  These allegations were not included in the Complaint, but would not alter the Court's decision even if they were.

conference, in which Plaintiff attempted to provide additional support for his claims.

Construing the Complaint liberally, Plaintiff references potential claims against the following additional individuals:  Detective O'Leary, Sergeant Fox, Police Officer Guzik, Zachary W. Carter, and Yael Barbabay.  For the following reasons, allowing Plaintiff an attempt to amend and serve these individual defendants would be futile.  Therefore, Plaintiff's claims are dismissed with prejudice.  *See Hobson v. Fischer*, No. 10 Civ. 5512 (SAS), 2011 WL 891314, at *6 (S.D.N.Y. Mar. 14, 2011).

### A.  Leave to Amend as to Individual NYPD Officers is Futile.

Throughout his Complaint and brief, Plaintiff references the actions of Detective O'Leary, Sergeant Fox, and Police Officer Guzik, broadly asserting a cover-up, inadequate investigation, and concerted effort to conceal his assault.  Doc. 16 at 2-3; Doc. 1 ¶¶ 2-7.  Plaintiff further claims that Detective O'Leary committed age discrimination and obstruction of justice when he failed to provide Plaintiff with information regarding his attacker and "lied about the assailant being arrest for assault."  *See* Doc. 16 at 2; Doc. 8 at 2.  As for Police Officer Guzik and Sergeant Fox, Plaintiff does not allege any specific claims against them, but merely notes that Police Officer Guzik was the responding officer at the incident and Sergeant Fox later called him to indicate that no arrest had been made.  *See* Compl. ¶¶ 2, 5.

For the same reasons as discussed above, any claims against the individual officers involved in the investigation of Plaintiff's case also fail under the doctrines of *res judicata* and collateral estoppel.  Even if the Court were to read Plaintiff's Complaint as including the officers as defendants, Plaintiff cannot relitigate the same issues merely because the individual defendants were not parties to the case.  "Under the modern doctrine of collateral estoppel, a party who has had a full and fair opportunity to litigate an issue and lost in prior litigation may

be foreclosed from relitigating that issue in subsequent cases, even where the opposing party is different in each case." *Cliff v. Internal Revenue Service*, 496 F.Supp. 568, 576 (S.D.N.Y. 1980). Similarly, the doctrine of *res judicata* also bars claims "where the party against whom *res judicata* is asserted has a substantial identity with a party in a prior litigation where his interests were represented in the prior action." *Grossman v. Axelrod*, 466 F. Supp. 770, 775 (S.D.N.Y. 1979), aff'd, 646 F.2d 768 (2d Cir. 1981). Here, there is a substantial identity of interest between the City and the individual NYPD employees that Plaintiff identifies.

Defendant also argues that Plaintiff fails to state a claim against Detective O'Leary, Sergeant Fox, and Officer Guzik for the additional reason that there is no cause of action in the State of New York for negligent prosecution or investigation. Doc. 13 at 11-12. If the Court were to allow Plaintiff to amend his Complaint to include the individual NYPD officers, Plaintiff's claims related to the alleged negligent investigation would also be futile. *See Pandolfo v. U.A. Cable Sys. of Watertown*, 568 N.Y.S.2d 981, 982 (4th Dept. 1991) ("As a matter of public policy, there is no cause of action in the State of New York for negligent prosecution or investigation"); *see also Wright v. Orleans Cty.*, No. 14 Civ. 00622A (LF), 2015 WL 5316410, at *21 (W.D.N.Y. Sept. 10, 2015) (noting "negligent investigation…is not recognized under New York law"). Similarly, "negligent investigation [is not] a basis for § 1983 liability in the absence of some special relationship creating an affirmative duty." *Wright*, 2015 WL 5316410 at *21. "Cases finding a special relationship typically involve a clear promise to take specific action on behalf of the plaintiff, such as a promise to arrest a violent neighbor 'first thing in the morning.'" *Damato v. City of N.Y.*, No. 06 Civ. 3030 (DC), 2008 WL 2019122, at *3 (S.D.N.Y. May 12, 2008). Additionally, "[a]n assurance to perform a basic police function, without more, does not amount to a promise to act affirmatively on behalf of plaintiffs." *Id.*

Plaintiff here has not claimed any duty, nor pleaded any facts consistent with a special relationship.

Therefore, Plaintiff's claims against the individual officers would likewise not be sufficient to overcome a motion to dismiss.[11]

### B. Leave to Amend to Add the City's Lawyers is Futile Because They Are Entitled to Absolute Immunity.

The sole claim that the Court does not dismiss on the basis of collateral estoppel or *res judicata* is Plaintiff's claim regarding actions taken by Corporation Counsel Carter and ACC Barbabay.  The Court finds that any attempt to sue the City's lawyers in their individual capacities would be futile because they are protected by the doctrine of absolute immunity.

"In determining immunity, [courts] accept the allegations of [the plaintiff's] complaint as true."  *Kalina v. Fletcher*, 522 U.S. 118, 122 (1997); *see also Shmueli v. City of New York*, 424 F.3d 231, 233 (2d Cir. 2005).  Courts construe Section 1983 "in harmony with general principles of tort immunities and defenses."  *Filarsky v. Delia*, 132 S. Ct. 1657, 1665 (2012) (quotations and citation omitted)).  "City attorneys acting in their official capacity in defense of civil suits are afforded absolute immunity against § 1983 actions seeking damages."  *Zbryski v. Bd. of Trustees of N.Y. Fire Dep't Pension Fund*, No. 01 Civ. 4801 (RCC), 2004 WL 2238503, at *6 (S.D.N.Y. Oct. 4, 2004) (citations omitted); *see also Spear v. Town of W. Hartford,* 954 F.2d 63, 66 (2d Cir.1992); *Barrett v. United States,* 798 F.2d 565, 572–73 (2d Cir. 1986).  "[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor

---

[11] Similarly, Defendant argues that to the extent any claims may be read to assert claims under New York state law, these claims must be dismissed because Plaintiff did not file a Notice of Claim within ninety days after the incident. *Id.* at 15-16.  The Court need not consider this issue because it finds that these claims would be barred under the doctrines of *res judicata* and collateral estoppel.

is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused." *Bernard v. Cnty. of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004).

Plaintiff's claim against the two attorneys stems entirely from their actions in defending the City against Plaintiff's lawsuits. Plaintiff alleges that ACC Barbabay acted dishonestly and fraudulently in the state court proceeding and that Carter further engaged in a cover-up "based on racial and age discrimination." Compl. ¶¶ 10-12. Absolute immunity thus bars suit for damages against them and any attempts to amend would be futile. *Karris v. Varulo*, No. 14 Civ. 1077 (SJF), 2014 WL 1414483, at *4 (E.D.N.Y. Apr. 10, 2014) (concluding that granting *pro se* prisoner leave to amend would be futile because defendants were entitled to absolute immunity, and collecting cases). Therefore the Court does not grant leave to amend as to Carter[12] and ACC Barbabay.

## VI.   CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is GRANTED with prejudice. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 10, close the case, and mail a copy of this Order to Plaintiff.

It is SO ORDERED.

Dated:      December 8, 2016
            New York, New York

Edgardo Ramos, U.S.D.J

---

[12] Defendant also argues that all of Plaintiff's claims against Carter also fail because Carter had no personal involvement in the alleged constitutional deprivations. Doc. 13 at 14-15. Because the Court finds that Carter is entitled to absolute immunity, the Court need not consider whether Plaintiff's claim against Carter would be barred for a lack of personal involvement.

23